UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK BRYANT, et al.,

    Plaintiffs,                                        Case No. 07-10447

v.                                                      07-13214

FERRELLGAS, INC. et al.,

    Defendants,

and                                                  Hon. John Corbett O'Meara

FRANKENMUTH MUTUAL INSURANCE
COMPANY, Subrogee of Lillian Kuchar,

v.

FERRELLGAS, INC. et al.,

    Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT**

Before the court are the following motions from Defendants: Motion to Dismiss Count 1 as Improperly Pled, filed October 30, 2007; Motion for Summary Judgment as to Plaintiffs' *Res Ipsa Loquitur* claim, filed October 30, 2007; and Motion for Summary Judgment pursuant to Michigan's Statute of Repose, filed January 15, 2008. This matter has been fully briefed and the court heard oral argument on April 10, 2008. For the reasons set forth below, Defendants' motions are denied.

1

**BACKGROUND FACTS**

On September 3, 2005 at around 11:30 in the evening, an explosion blew apart Lorrie Kuchar's home in Caledonia Township. Inside were seven children who ranged from ages 2-14, and two young adults who were in the kitchen babysitting the children.[1]

The Bryant children lived in Virginia and had come to Michigan with their mother to spend time with their aunt, Lorrie Kuchar.[2] After a family outing on September 3rd, Joyce Bryant and her sister Lorrie Kuchar left the children in Kuchar's home so they could visit with another sister who lived a short distance from Kuchar. It was while they were gone that the home exploded. Six of the Bryant children died in the explosion; two others, as well as Joseph Moore were seriously injured.[3]

A Michigan State Police Fire Marshall investigation revealed that a propane leak caused the explosion. However, the investigation failed to determine where the leak occurred. In 1989, Defendants[4] installed propane gas service to the Kuchar home. Since that time, Defendants had exclusive ownership of the system. They were responsible for testing and maintaining the system. The system included the storage tank, the first and second stage regulators, and the copper tubing which carried the gas between the regulators, and then into the house.

---

[1]The young adults were Rebekah Bryant, age 19, and Joseph Moore, a family friend who was 17 at the time.

[2]The father, Mark Bryant, was an accountant who stayed home to work on tax returns. The Bryant's 17 year old daughter Cameron also stayed home. In all, the Bryants had nine children; eight of them were in Michigan with their mother.

[3]The dead included: Rebeka, 19; Joseph, 10; Nehemiah, 9; Martina, 7; David, 4; and Issac, 2.

[4]Defendants include Ferrellgas, Inc. and Ferrellgas, L.P.

## LAW AND ANALYSIS

### I. STANDARDS FOR MOTION TO DISMISS AND SUMMARY JUDGMENT

A party is entitled to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. A motion to dismiss may be granted under Fed. R. Civ. P. 12(b)(6), "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In reviewing the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### II. DEFENDANTS' MOTION TO DISMISS COUNT 1 AS IMPROPERLY PLED

Defendants' argument is that Plaintiffs' negligence claim is, in truth, a products liability claim that attempts to avoid the damages caps provided for in Michigan's product liability law.

Michigan product liability law is set forth clearly by statute. MCL § 600.2945 provides the relevant definitions:

(g) "Product" includes any and all component parts to a product.

(h) "Product liability action" means an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product.

(i) "Production" means manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling.

Defendants attempt to apply <u>Duronio v. Merck & Co.</u>, 2006 WL 1628516 (Mich. App. 2006) to the facts in this case. They argue that Plaintiffs' Complaint clearly alleges actions identified in Michigan's product liability statute. These include paragraphs 11-12 in which Plaintiffs alleges that FerrellGas "was engaged in the business of **selling** . . . propane gas, as well as . . . **inspecting** and repairing propane equipment." Another is paragraph 16 in which Plaintiffs allege "[Defendants] . . . was required to **inspect** and maintain the aforesaid underground tubing. Plaintiffs in paragraph 17 allege [Defendants] failed to properly conduct the pressure **test** . . . and/or assure and **certify** . . . ."

Michigan law holds gas utilities liable for the equipment and pipes that they own and maintain outside a home, and that generally a home owner is liable for pipes and equipment maintained inside her home. <u>Girvan v. Fuelgas Co</u>, 238 Mich. App. 803, 713-14 ((1999) (citing <u>Fleegar v. Consumers Power Co.</u>, 262 Mich. 537 544 (1933). The Michigan Supreme Court has held that those dealing with gas, "must exercise such care for the safety of others as a reasonably prudent man would exercise in the face of potential danger. <u>Gadde v. Michigan Consolidated</u>

Gas,l 377 Mich. 177, 126 (1966).

The record is clear that Defendants not only installed the system, but they owned it and, as important, were in an ongoing relationship with the Kuchars for maintaining and inspecting the propane system. Plaintiffs use of the words "inspect", "test", "certify" come in the context of maintaining the propane system and safely delivering the propane to the Kuchar home, and not in the context of the production of the propane system. Rather than pointing to faulty installation, the complaint alleges Defendants' failures were in "inspecting", "testing" and "certifying" the system to make sure the propane delivery system remained safe. The complaint pertains to allegations of negligent operation and maintenance, which included replacing parts that were substandard for safe delivery of propane gas. For this reason, Count 1 is correctly pled as a negligence claim.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' *RES IPSA LOQUITUR* CLAIM[5]

Plaintiffs' complaint states they intend to use *res ipsa loquitor* as a means of explaining and proving what caused the explosion that is central to this case. Specifically, Plaintiffs claim the explosion "would not ordinarily occur in the absence of negligence, that the . . . propane gas delivery system . . . was in the exclusive control of [defendants] and Plaintiffs' injuries . . . were not due to any voluntary action or contribution by them . . . . Accordingly, Plaintiffs hereby plead the Michigan version of *res ipsa loquitor* or circumstantial evidence/negligence against [Defendants]." Bryant Complaint ¶ 28; Frankenmuth Mutual Complaint ¶ 16.

---

[5]Defendants labeled this as a Summary Judgment motion, but they argue it as a Motion to Dismiss. Likewise, this court also treats it as a Motion to Dismiss.

First, I question whether this is the appropriate time to try to decide whether *res ipsa loquitur* applies. "The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act." Jones v. Porretta, 428 Mich. 132, 150 (1987). Discovery does not end until October 15, 2008, close to six months from now. The deadline for dispositive motions is November 14, 2008. At best, it is awkward to decide what is essentially an evidentiary matter before all the possible evidence is in.

Second, regardless of Defendants' motion heading or Plaintiffs' wording that it "plead[s]" *res ipsa loquitur*, Defendants argue a Fed. R. Civ. P. 12(b)(6) motion to dismiss a *res ispa loquitur* claim. In other words, a failure to state a claim. *Res ipsa loquitur* is not a claim.[6] As mentioned above, it is a doctrine that allows plaintiffs' to create an inference of negligence when plaintiffs cannot prove an actual act of negligence. Id. It is an evidentiary issue. For these reasons, the motion to dismiss Plaintiffs' *res ipsa loquitur* inference is prematurely brought before this court.

### IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, PURSUANT TO MICHIGAN'S STATUTE OF REPOSE

Defendants motion the court to dismiss this matter on summary judgment, pursuant to Michigan's Statute of Repose. The argument posed is that Plaintiffs' claims are time-barred by M.C. L. § 600.5839(1), which provides:

> No person may maintain any action to recover damages for any injury resulting to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury, against any

---

[6]Defendants' reply brief admits *res ipsa loquitur* is not a claim. Defendants' Reply Br. at 3.

> state licensed architect or professional engineer performing or furnishing the design or supervision of construction of the improvement, or against any contractor making the improvement, more than six years after the time of occupancy of the completed improvement, use, or acceptance of the improvement, or one year after the defect is discovered or should have been discovered, provided that the defect constitutes the proximate cause of the injury or damage for which the action is brought and is the result of gross negligence on the part of the contractor or licensed architect or professional engineer. However, no such action shall be maintained more than 10 years after the time of occupancy of the completed improvement, use, or acceptance of the improvement.

The statute is both a statute of limitations and a statute of repose. O'Brien v. Hazelet & Erdal, 410 Mich. 1, 15 (1980). The statute applies to cases involving architects, contractors, and engineers that arise out of a defective and unsafe improvement to real property. Ostroth v. Warren Regency, 263 Mich. App. 1, 17 (2004). The purpose of the repose statute is to prevent stale claims and relieve potential defendants from a protracted fear of litigation. Frankenmuth Mutual Ins. Co. v. Marlette Homes, Inc., 456 Mich. 511, 515 (1998).

Defendants attempt to put themselves in the place of a contractor who made an improvement to the property almost 20 years ago. However, this view excludes a crucial aspect of Defendants' relationship with the Kuchars. The evidence presented to this court, including a written contract, indicate that Defendants owned the propane system and maintained exclusive control over the system. Rather than merely installing a propane gas system for the Kuchar house, Defendants rented the system to the Kuchar's and promised to test and service the system, leading up to the Kuchar house. See e.g. Bradley v. Hamilton Mutual Ins., 2002 WL 345962 (Mich App. 2002)(in a case involving electric power lines, the court stressed that reasonable care to protect the public from danger included the duty to inspect and repair the instrumentalities used to deliver power to a home, including a duty to discover and remedy defects in those instrumentalities). The relationship here was not one of a contractor who installed gas lines;

rather it was one where a gas provider maintained an active relationship with the Kuchar family, a relationship that bore operation and maintenance responsibilities for the Defendants. For this reason, the statute of repose does not apply to these facts.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendants' motions to dismiss and for summary judgment, filed October 30, 2007 and January 15, 2008, are DENIED.[7]

s/John Corbett O'Meara
United States District Judge

Date: April 17, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, April 17, 2008, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager

---

[7]Defendants' Motion to Dismiss *Res Ipsa Loquitur* is dismissed without prejudice.

8