UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK BRYANT, et al,

               Plaintiffs,

-vs-

FERRELLGAS, INC., et al,

               Defendants,

and

FRANKENMUTH MUTUAL INSURANCE
COMPANY, Subrogee of Lillian Kuchar,

               Plaintiff,

-vs-

FERRELLGAS, INC, et al,

               Defendants.

_____

| | |
|---|---|
| Case nos. | 07-10447 |
| | 07-13214 |
| Honorable: | John Corbett O'Meara |

**PLAINTIFFS BRYANT AND MOORE'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT**

JOHN D. McCLUNE (P51948)
Attorneys for Bryant and Moore
100 West Big Beaver Road, Suite 130
Troy, MI 48084
(248) 258-4800
jdmcclune@schadenlaw.com

PHILIP SWANN (P28345)
Attorney for Joseph Moore
4000 S. Oak Street, Ste. 200
P.O. Box 70
Metamora, MI 48455
(810) 678-3649
attypswann@aol.com

JEFFERY ZILINSKI (P35884)
Attorney for Joyce Bryant
4500 East Court Street
Burton, MI 48509
(810) 743-2211
jszjd@aol.com

JOHN J. KALO (P29861)
Attorneys for Mark Bryant
4500 East Court Street
Burton, MI 48509
(810) 743-4363
jkalo@aol.com

WILLIAM R. COPPEL (P12220)
CHARLES L. McCARTER (P17282)
Attorneys for Mark Bryant
4500 East Court Street
Burton, MI 48509
(810) 743-4363
attorneycoppel@aol.com
chasmack1@yahoo.com

<u>ISSUE PRESENTED</u>

I.      Whether assuming *arguendo* Michigan non-party fault law were to

         apply, whether an issue of material fact exists as to non-party fault

         of Lillian (Lorrie) Kuchar, Matthew Kuchar, and Lawrence Moiles,

         Jr., (listed in Defendant's  Notice of "Potential" Nonparties at

         Fault) as to the water heater installation when there is no proof that

         any of these people did anything wrong nor any evidence

         supporting causation?

                  Plaintiffs answer this question: "no"


II.     Whether a rational reason exists to displace Michigan's non-party

         fault/apportionment law with joint and several liability of Missouri

         or Virginia?

                  Plaintiffs answer this question "yes"

## CONTROLLING AUTHORITIES

Fed. R. Civ. P. 56(c)

*Bryant v. Ferrellgas, Inc.,* 2008 WL 1766661 (E.D. Mich. April 17, 2008)

MCL § 600.6304

*Wall v. Cherrydale Farms, Inc.*, 9 F. Supp.2d 784, 786 (E.D. Mich.1998) (burden of non-party fault on a defendant).

*Acorn Window Systems, Inc. v. Detroit Edison Co.,* 2003 WL 21921165 (Mich. App. 2003), Ex. (a defendant attempting to mitigate liability through a comparative fault defense has the burden of alleging and proving that another person's conduct was a proximate cause of damages.)

*Holton v. A+ Ins. Associates, Inc.*, 255 Mich. App. 318, 326, 661 N.W.2d 248, 253 (2003) (while causation is generally a matter for the trier of fact, if there is no issue of material fact, then the issue is one of law for the court)

*In re Disaster at Detroit Metropolitan Airport on August 16, 1987*, 750 F. Supp. 793 (E.D. Mich.1989) (conflict of law analysis)

TABLE OF AUTHORITIES

Cases                                                                      Page(s)

*Acorn Window Systems, Inc. v. Detroit Edison Co.,*
         2003 WL 21921165 (Mich. App. 2003)                                 12

*Allstate Ins. Co. v. Brown,*
         736 F. Supp. 705 (W.D.Va. 1990)                                    16

*Auito v. Clarkston Creek Golf Club, Inc.,*
         2004 WL 1254193  (Mich. App. 2004)                                 13

*Basirico v. State Farm Mut. Auto. Ins. Co.*
         2008 WL 2446906 (E.D. Mich. 2008)                                   1

*Bryant v. Ferrellgas, Inc.,*
         2008 WL 1766661 (E.D. Mich. April 17, 2008)                         2

*Capell v. Abbick,*
         123 S.W.3d 193 (Mo. App. W.D. 2003)                                17

*Dale v. Ala Acquisitions I, Inc.,*
         434 F. Supp.2d 423 (S.D. Miss. 2006)                               19

*Daubert v Merrell Dow Pharms., Inc.,*
         509 U.S. 579 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993)              14

*Evans v. Knisley Welding, Inc.,*
         Unpublished Order of Judge Batzer                                  19

*Fahy v. Dresser Industries, Inc.,*
         740 S.W.2d 635 (Mo. 1987)                                          17

*In re Enron Corp. Securities, Derivative & ""ERISA" Litigation,*
         236 F.R.D. 313 (S.D. Tex. 2006)                                    13

*Holton v. A+ Ins. Associates, Inc.,*
         255 Mich. App. 318 661 N.W.2d 248 (2003)                           13

*In re Air Crash Disaster,*
         86 F.3d 498 (6th Cir. 1996)                                        18

*In re Disaster at Detroit Metropolitan Airport on August 16, 1987,*
         750 F. Supp. 793 (E.D. Mich.1989)                                  19

<u>TABLE OF AUTHORITIES</u>

| <u>Cases</u> | <u>Page(s)</u> |
|---|---|
| *Jenson v. ARA Services, Inc.,*<br>736 S.W.2d 374  (Mo. 1987) | 17 |
| *Jones v. Enertel, Inc.,*<br>254 Mich App 432, 656 N.W.2d 870 (2002) | 13 |
| *Klaxon Co. v. Stentor Elec. Mfg. Co.,*<br>313 U.S. 487 (1941) | 18 |
| *Lindquist v. Mid America Orthopaedic Surgery, Inc.,*<br>224 S.W.3d 593  (Mo. 2007) | 17 |
| *Mathes v. Sher Express, L.L.C.,*<br>200 S.W.3d 97 (Mo. App. W.D. 2006) | 17 |
| *McCoy v. Lamotte Coachlight Corp.,*<br>2007 WL 4270659  (Mich. App. 2007) | 12 |
| *McLean v. 988011 Ontario, Ltd.,*<br>224 F.3d 797 (6th Cir. 2000) | 1, 14 |
| *Midkiff v. Lowe's Home Centers, Inc.,*<br>2007 WL 2188131 (W.D.Va. 2007) | 16 |
| *Nash v. Wells Fargo Guard Servs., Inc.,*<br>678 So.2d 1262 (Fla.1996) | 12 |
| *North American Specialty Ins. Co. v. Goldstein Enterprises, LLC,*<br>2008 WL 820351 (W.D. Mich. 2008) | 1 |
| *Palenkas v. Beaumont Hosp.,*<br>432 Mich. 527. 443 N.W.2d 354 (Mich. 1989) | 11 |
| *Pomella v. Regency Coach Lines, Ltd.,*<br>899 F. Supp. 335 (E.D. Mich.1995) | 14 |
| *Reeves v. Kmart Corp.,*<br>229 Mich. App. 466, 582 N.W.2d 841 (1998) | 2 |
| *Regents of University of California v. Credit Suisse First Boston (USA), Inc.,*<br>482 F.3d 372 (5th Cir. 2007) | 13 |

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                   <u>Page(s)</u>

*Reyno v. Piper Aircraft Co.,*
    630 F.2d 149 (3d Cir. 1980)
    rev'd on other grounds 454 U.S. 235 (1981)                                    19

*Skinner v. Square D Co.,*
    445 Mich. 153, 516 N.W.2d 475 (1994).                                          14

*Sutherland v. Kennington Truck Service Ltd.,*
    454 Mich. 274 (1997)                                                          18

*Thurman v. St. Andrews Management Services, Inc.,*
    2008 WL 4402456 (Mo. App. E.D. Sept. 30, 2008)                                17

*Villarreal v. Superior Court of Los Angeles,*
    2004 WL 902114 (Cal. App. April 28, 2004)                                  19, 20

*Wall v. Cherrydale Farms, Inc.,*
    9 F. Supp.2d 784 (E.D. Mich.1998)                                             12

*Wright v. Lilly,*
    2004 WL 2656839  (Va. Cir. Ct. 2004)                                          16

<u>Statutes/Court Rules</u>

Fed. R. Civ. P. 56 (c)                                                                     15

MCL § 600.2957(1)                                                                          17

MCL §600.2960(1)                                                                           12

MCL § 600.6304                                                                             17

V.A.M.S. § 537.067(1)(1)-(2)                                                               17

<u>Other Authorities:</u>

*Charles E. Friend, Personal Injury Law in Virginia,*
    § 14.1 (3rd ed.2003)                                                        16

TABLE OF CONTENTS

|       |                                                                              | Page |
|-------|------------------------------------------------------------------------------|------|
| I.    | Summary                                                                      | 1    |
| II.   | Standard of Review                                                           | 1    |
| III.  | Pertinent Facts                                                              | 2    |
| IV.   | Legal Argument Under Michigan Non-Party Fault Law                            | 11   |
| V.    | Legal Argument Re: Application of Missouri Joint and Several Liability Law, or, Alternatively, Virginia Joint and Several Liability Law; No Non-party Should Be Allowed on the Jury Verdict Form | 15   |

## I. Summary

There is no genuine issue of material fact as to the issue that a "potential" non-party named by Ferrellgas (Lillian Kuchar, the homeowner, her son, Matt Kuchar, and Larry Moiles, the installer who installed the new water heater) were in any way negligent and/or a causal factor in the explosion. No proof exists to support Defendants' affirmative defense on this issue as to the installation of the water heater assuming *arguendo* Michigan non-party fault law were to apply. Also, a rational reason exists to displace Michigan's non-party fault/apportionment law with joint and several liability. Thus, partial summary judgment is appropriate. Concurrence for relief was sought pursuant to Local Rule 7.1, on October 31, 2008, but was not provided.

## II.       Standard of Review

Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense-on which the defendant bears the burden of proof at trial-a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case."....

While whatever evidence there is to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving defendant, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." After all, in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense "there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the [defendant's affirmative defense] necessarily renders all other facts immaterial."[1]

While causation is generally a matter for the trier of fact, if there is no issue of material fact,

---

[1]*North American Specialty Ins. Co. v. Goldstein Enterprises, LLC,* 2008 WL 820351, *7 (W.D. Mich. 2008) (citations omitted), **Ex. A**. *See also Basirico v. State Farm Mut. Auto. Ins. Co.* 2008 WL 2446906, *1 (E.D. Mich. 2008), **Ex. B**; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) (citations omitted) ("To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. A mere scintilla of evidence is insufficient, because 'there must be evidence on which the jury could reasonably find for the [non-movant].'").

then the issue is one of law for the court. *Reeves v. Kmart Corp.*, 229 Mich. App. 466, 480, 582

N.W.2d 841 (1998).

**III.    Pertinent Facts**

This Court is well familiar with the facts of this case. *See Bryant v. Ferrellgas, Inc.*, 2008 WL

1766661 (E.D. Mich. April 17, 2008).  As summarized by the Court:

> The Bryant children lived in Virginia and had come to Michigan with their mother to spend
> time with their aunt, Lorrie Kuchar.  After a family outing on September 3rd, Joyce Bryant
> and her sister Lorrie Kuchar left the children in Kuchar's home so they could visit with
> another sister who lived a short distance from Kuchar. It was while they were gone that the
> home exploded. Six of the Bryant children died in the explosion; two others, as well as
> Joseph Moore were seriously injured.
>
> A Michigan State Police Fire Marshall investigation revealed that a propane leak caused the
> explosion. However, the investigation failed to determine where the leak occurred. In 1989,
> Defendants installed propane gas service to the Kuchar home. Since that time, Defendants
> had exclusive ownership of the system. They were responsible for testing and maintaining
> the system. The system included the storage tank, the first and second stage regulators, and
> the copper tubing which carried the gas between the regulators and then into the house.

2008 WL 1766661, *1 (footnotes omitted).

Defendants named Lorrie Kuchar, Larry Moiles, Jr., and Matthew Kuchar, Lorrie's son, in their

"Notice of Potential Nonparties at Fault."  See Defendants' "Notice of **Potential** Nonparties at

Fault"(emphasis added), **Ex. C**.  "Defendants believe that the explosion occurred due to the

negligence of, Larry Moiles, Jr., Matthew Kuchar and Lorrie Kuchar, who were responsible for the

installation of a water heater just days prior to the explosion."  Id., pgs. 1-2.  **No facts were**

**provided to show what was done wrong by these nonparties.**[2]

---

[2]Of note, the Magistrate recently denied Plaintiffs' procedural motion to strike potential
non-parties at fault (failure to comply with the law Defendants cited). The instant substantive
motion for partial summary judgment challenges the substantive factual basis supporting the non-
party fault affirmative defense as to the water heater installation pursuant to Fed. R. Civ. P. 56.

The proofs have shown and Plaintiffs' experts have opined, based upon their education, qualifications, training, experience, tests and/or investigative analysis performed in this action, to a reasonable degree of engineering and/or scientific certainty, that there was an outside propane gas leak from an illegal and negligently installed compression fitting in an underground copper tube which eventually caused a corrosive hole in the underground copper tube, allowing propane gas (which is heavier than air) to migrate through the soil and into the basement, which ultimately caused this explosion.  See portions of expert reports of Allen Bullerdiek, Les Hendrickson and Douglas Buchan, attached as **Ex. D, E,** and **F,** respectively.

Migration of propane gas from leaks in underground tubes through the soil into basements is a known hazard in the propane gas industry, as well as the fact that the propane odorant additive, ethyl mercaptan, scrubs and/or fades when it passes through the soil and concrete.[3]

According to the testimony of Defendants' own District Manager (Bruce Montroy) at the time of initial installation, the compression fitting shown in the x-ray of the underground copper tube at issue (B. Montroy Dep., pgs. 166-169; Dep. Ex. 86, **Ex. G**) was not safe as it has a potential for disastrous results—that type of fitting was "**doomed for failure.**"[4]

---

[3]See NFPA 921, Guide for Fire and Explosion Investigations, §19-9.7 "Underground Migration of Fuel Gases" and §19-9.7.1 "Odorant 'Scrubbing'" (1998), **Ex. H**; Dep. of C. Slisz, Ferrellgas' Director of Safety, pgs. 29-30, **Ex. I**; Ferrellgas Bates nos. 0084, "Propane Gas May Lose Its Odor ("because of an underground leak in the piping or tank."); nos. 0560-0573, 1551-1553; 2062-2063; and 2120-2121, **Ex. J**; MIOSHA News, Vol. 1, No. 1, "Chemical Migration Through Soil...Poses a Confined Space Entry Hazard," p. 5, **Ex. K**.

[4]Dep. of B. Montroy, pgs.166-169, **Ex. G**. The installation was "criminal" per testimony of T. Barry (Dep. of T. Barry, pgs. 14-15, 32-35, **Ex. L**), Chief Mech. Officer of Michigan Const. Code. Defendants had notice of the underground line's propensity to leak in that they failed to obtain a required mech. permit for installation of its underground copper line; violated various codes/industry standards; used the wrong grade of copper tubing; failed to pressure and/or leak-test the line to assure it was "gastight"; failed to use continuous copper tubing per Ferrellgas'

Disturbingly, the Ferrellgas "keep full" service history at Lorrie's house indicates various "out of gas" events at 3660 East Copas Road.[5]  In February 2005, Lorrie even complained to Ferrellgas that she thought she was using too much propane.[6]  The last "out of gas" event was on March 1, 2005, just 6 months prior to the explosion.[7]  Ferrellgas  delivered propane on that date.[8]  Pursuant to Michigan law,  industry standards and Ferrellgas' own policy and procedure, a leak-test is required when a propane supplier's tank runs out of gas and the pilots on the appliances in the customer's home are supposed to be re-lit.[9]  Michigan law, taken from NFPA 54, required Ferrellgas to perform a leak-test on March 1, 2005, because of the "out of gas" event.[10]  When a customer has an "out of gas" event when he/she is on a "keep full" basis with Defendants, the concern is there may be a leak in the propane system.  There is no record of a leak test having been

_____

policy, instead using an improper compression fitting. *Id.*; Complaint, ¶¶16-17, Doc. 1;  Dep. of C. Slisz, pgs. 96-97, **Ex. I** (Ferrellgas policy); Dep. of Montroy, p.139, **Ex. G**; Dep. of L. Cordier, pgs. 19-20, 31 (Ferrellgas pulled no permits), **Ex. M**; Dep. G. Palmer, pgs. 36, 47-49, **Ex. N**.

    [5]Ferrellgas Bates nos.  0008 (7/4/97); 0060 (10/15/97); 0061 (7/22/98); 0053 (3/9/01); 0032 (3/1/05); March 1, 2005, 0% Gas Record, **Ex. J**.

    [6]Dep. of L. Kuchar, pgs. 145-146, **Ex. O**.

    [7]March 1, 2005, Ferrellgas 0% Gas Record, Bates no. 0032, **Ex. J**; Dep. of L. Kuchar, pgs. 156-158, **Ex. O**.

    [8]March 1, 2005, Ferrellgas 0% Gas Record, Bates no. 0032, **Ex. J**; Ferrellgas Bates No. 0011, 0024, **Ex. J**.

    [9]Ferrellgas Bates no. 2572, **Ex. J**; "Ferrellmeter leak detection system" no. 2780, **Ex. J**, (Ferrellgas "quickly and reliably check[s] for unacceptable leaks in out-of-gas systems without entering your home"); Dep. of C. Slisz, Ferrellgas' Director of Safety, pgs. 142-143, **Ex. I**.

    [10]Dep. of C. Slisz, pgs. 143-145, **Ex. I**; NFPA 54, **Ex. S**; NFPA 58, **Ex. T**; Michigan Residential Code (2003), **Ex. U**; Dep. of T. Barry, Chief Mech. Officer, Michigan, p. 37, **Ex. L**.

performed by Ferrellgas on March 1, 2005, and the Ferrellgas delivery person admits he did not conduct a leak test as he thought the tank was "1%" full despite the fact that the pilots on the home appliances were out and he filled the tank to more than 80% (i.e., maximum allowed) and there was no 1% reading on the gauge.[11]  With the exception of Ferrellmeter tests following two of various prior "out of gas" events, Ferrellgas has produced no evidence or document that a leak test was ever conducted, and has self servingly "purged" its records pertaining to 3660 East Copas Road.[12]

Defendants know an "out of gas" event exacerbates the size of a corroded hole in an underground copper tube in a propane system:  **"Potentially dangerous conditions can result anytime gas service is interrupted.  Corrosion to underground piping and tanks can accelerate when the flow of propane vapor or liquid through a pinhole leak stops and no longer displaces the soil, ground water and oxygen necessary for corrosion to occur."**[13]

Defense experts concede the underground copper tube was corroded, just not completely corroded as of September 3, 2005.[14]

---

[11]Dep. of C. Slisz, pgs. 120-121, **Ex. I**; Dep. of W. Dickerson, pgs. 184-185, **Ex. V**.  See also photo of gauge, **Ex. W**.

[12]Ferrellgas' Answer to Plaintiffs' First Set of Interrogatories, ##18-19, **Ex. X**.

[13]Dep. of C. Slisz, p.137 (discussing Ferrellgas' "Flash Notes"), **Ex. I**; Ferrellgas' "Flash Note," Bates no. 2248 (January 2005), **Ex. J**.

[14]For example, defense expert Hoffman attested in his report that there was:
- "unexpected localized corrosion deterioration of the buried copper tube and compression fitting," (Hoffmann Report, p.1, **Ex. Y**),

- "There were three lengths of copper tube, joined by compression/ferrule-type fittings. Two of the three lengths of copper tube used in the installation were not in accordance with the NFPA's 54/58 requirements for tube wall schedule."  (id.)

The Ferrellgas defendants (who incredulously continue to deny that they installed the illegal underground copper tube, but have no evidence to support that contention, will be the subject of another Plaintiffs' motion for partial summary judgment), admit that the installation of the underground copper tube was contrary to all industry standards, and that the compression fitting (the source of the leak) was not to be used in underground installations.[15] Defendants had notice of the underground copper tube's propensity to leak in that they failed to obtain a required mechanical permit for installation of its underground copper tube; violated various codes/industry safety standards and installed an illegal compression fitting; used the wrong grade of copper tubing (i.e., too thin); failed to pressure and/or leak test the line to assure it was "gastight"; and failed to use continuous copper tubing per Ferrellgas' policy.[16] It was **obviously** illegal due to the thin walled

---

- there "was one breach in this supply line," (id., p. 2), and
- "outside-in corrosion of the copper tube was present in the area where the tube was found to be 'separated'" (id.).
  In other words, the defense is, apparently, that the underground copper tube made up of illegal materials was clearly corroded and would have eventually failed, just not on September 3, 2005.

[15]It is not disputed that it was Ferrellgas' policy and procedure to install their underground copper tubes at new built constructions, and that 3660 E. Copas Road was a new built construction. B. Montroy Dep., p. 172, **Ex. G**. It cannot be disputed that the homeowners have testified that Ferrellgas installed the underground copper tube. J. Reiber Dep., p.66, **Ex. Z**. It is not disputed that no permit or inspection was ever obtained by Ferrellgas, which was the exclusive propane gas service provider since the home was built. L. Cordier Dep., p.19-20, **Ex. M**. Of course, any records to disprove that Ferrellgas installed the underground line were "purged" or destroyed by Ferrellgas. Ferrellgas' Answers to Interrogatories, **Ex. X**. This Court obviously saw through Ferrellgas' lack of evidence to refute installation when it issued its April 17, 2008, Order. *See supra.*

[16] *Id.*; Complaint, ¶¶16-17, Doc. 1; expert report of A. Bullerdiek, **Ex. D**; expert report of Les Hendrickson, **Ex. E**; expert report of Douglas Buchan, **Ex. F**; Dep. of C. Slisz, pgs. 96-97, **Ex. I** (Ferrellgas policy); Dep. of Montroy, p.139, **Ex. G**; Dep. of L. Cordier, pgs. 19-20, 31 (Ferrellgas pulled no permits), **Ex. M**; Dep. G. Palmer, pgs. 36, 47-49, **Ex. N**.

tubing and compression fitting's propensity to fail/leak.

Plaintiffs have reviewed the potential non-party fault notice and various defense experts' Rule 26 reports in this case.  **No negligence of Mrs. Kuchar, her son Matt, or Larry Moiles in the installation of the water heater has been shown more likely than not to be a causal factor in this explosion by any defense expert or otherwise**.  There is an absence of record evidence on this issue.  The *only* "evidence" cited by any expert relates to the fact that a new water heater was changed days prior to the explosion, was not allegedly vented properly, and speculation that it is "**possible**" that someone did something during the installation that "**may**" have caused stress to the piping.  That's it.  No evidence exists in the record in this case suggesting that the improper venting or alleged negligent installation of the water heater or pipe stress, was more likely than not, within a reasonable degree of scientific and/or engineering certainty, a causal factor in creating a leak and/or the subject explosion.  Also, it cannot be disputed that the new hot water heater's pilot was off at the time of the explosion, that the **gas control valves to the new water heater were turned off** just days before the explosion, (Dep. L. Kuchar, p. 57, **Ex. O**; Dep. M. Kuchar, pgs. 169-170, **Ex. P**) and **William Sprague and Larry Moiles both leak tested the fittings and piping to the water heater installation before the explosion, showing no leaks.** W. Sprague Dep., pp. 21, **Ex. Q,** Dep. L. Moiles, p.76, **Ex. R**.

There are only two of the defense experts who discuss the water heater at all.  The first proposed defense expert, Roger McCarthy, P.E., who was retained more than two (2) years after Ferrellgas began its investigation and has been paid approximately **$700,000.00 by Ferrellgas to date,** opined that the "origin of the explosion was in the utility room," but conceded that "**[t]he specific source of the propane gas leak in the utility room could not be determined from the**

7

**available evidence**." R. McCarthy Report, p. 7 (emphasis added), **Ex. AA**.[17]   Later in his report,

on page 72, **Ex. AA**, Mr. McCarthy references the water heater, and contends that it "is likely that

a propane gas leak **in *or* around** the water heater provided the fuel source for a flammable gas

explosion in the basement, **since this was the only piping of a 16 year old structure that had**

**been disturbed in the preceding 72 hours**." Id., p. 72 (emphasis added).   Again, no evidence is

contained in his 112+ page report of any negligence of Mrs. Kuchar, her son Matt, or Mr. Moiles in

installing the water heater which is attributable to a cause of the explosion. The mere fact that the

new water heater was installed is not sufficient, nor is "in or around" speculation.  Even when read

in a light most favorable to the non-movant, no part or component of the water heater, piping or

valving has been attested to be negligently installed or serviced by either Mr. Moiles, Mrs. Kuchar

or her son, Matt.

    Mr. McCarthy's recent deposition proved there was no leak "in" the water heater, and the lack

of admissible evidence on the "around" issue.  His argument appears to be a reverse *res ipsa*

*loquitur* argument:

> Q:  You agree that the propane gas which had accumulated, as you state, in the utility room
> which is located in the basement and which ultimately ignited escaped out of the propane
> system, that is, somewhere between the outside 500-gallon tank and the gas piping the
> furthest away from the tank located in the home?
>
> Mr. Mann: Object to form
>
> Q:        Somewhere it escaped someplace?  Would you agree with that?
>
> A:        **Yes.  I agree it escaped somewhere from the piping system with the caveat**
> **that the piping system had remained integral for 15 years, 5,000 days, and only in 72**
> **hours was a portion of it disturbed in the utility room.  And that's obviously where**
> **the leak came from.  The odds are phenomenally against it being anywhere else.**  R.

---

[17]This will be the subject of a *Daubert* motion.

8

McCarthy Dep., pg. 83, lines 4-21, **Ex. AA**(emphasis added).

Mr. McCarthy later speculates in his deposition as follows:

A:          ....What I said was that I believe had this leak rate been going on steadily for 72 hours it would have leaked so much gas that you would have detected it.   I believe the gas had to onset substantially later in the 72 hours than that.  I can discuss with you any number of things that **could** have happened, **but I can't prove what did happen to cause the onset of the leak.   We just know that it came on**.  And we know it couldn't have been operating very long because the people didn't smell the kind of propane necessary to cause this kind of damage.  Id., p. 116, line 3-17 (emphasis added).

. . . .

Q: ....So I just want to understand where we are. **You cannot tell me within a reasonable degree of engineering certainty which connection leaked, correct**?

A: **No, I can't tell you which connection in the utility room leaked.** What we know with engineering certainty is that it was one of those connections. Id., p. 117, line 1-6 (emphasis added).

Mr. McCarthy admitted he **could not even speculate** as to what brought on the leak in

unspecified piping allowing "gas to escape somewhere":

Q:  Would you agree with me that you cannot tell me within a reasonable degree of engineering certainty what started the leak that you say happened?

A: **That is correct.  I cannot tell you what brought on the leak.  I can only offer you possibilities**.  Id., p. 118, line 23-p. 119, line 3 (emphasis added).

This is certainly not enough to meet an affirmative defense burden as to negligent water heater

installation and causation relative to the explosion.[18]

The second proposed defense expert, David Meyer, is perhaps even more speculative.  He first

states that Mr. Moiles was not appropriately licensed, and that the water heater was not vented

---

[18]This is, essentially, a reverse *res ipsa loquitur* argument as to the water heater without proving the requisite elements. Innuendo that they were negligent because Lillian, Matt and/or Mr. Moiles were the last people to touch a gas appliance is not a valid defense.  By way of example, under this speculative analysis, the last person to maintain an aircraft would be responsible for an aircraft crash.

9

properly and "could not operate properly by the pilot outage the next morning."   Meyers Report, pp. 8-9, **Ex. BB**.  No causal connection is provided as to the pilot outage.  Mr. Meyers goes on to contend that "improper procedures **may have** created excessive strain and/or stress on piping system components resulting in subsequent failures such as.....**possible** gas leaks."  Id., p. 9 (emphasis added).  Note, he does not say any improper procedure "did" or "more likely than not" within a reasonable degree of engineering or scientific certainty created any excess strain and/or stress.  Mr. Meyer then suggests that due to vertical dimensional differences between the new and old water heater and what he believes was a gas cock,[19] improper thread engagement "**could** lead to fugitive propane in the basement."  *Id.*,  p. 9 (emphasis added), **Ex. BB.   Again, he does not state any alleged improper thread engagement "did" or "more likely than not" contribute as a causal factor in the explosion.**

Mr. Meyer then further speculates that the described configuration of the gas piping and attempt to compensate for insufficient pipe lengths  "**could** create additional stress on the piping once re-assembled."  *Id.*, p. 9 (emphasis added).  **Again, he never said any such configuration and attempts to compensate "did" or "more likely than not" contribute to or cause this explosion**.   He then speculates that because no evidence of the brass or steel gas cock was discovered on what he believes to be a gas cock, "**it's possible** some other component was installed in the piping to compensate for the differences."  *Id.* (emphasis added).  **Possibilities are not enough!**  Again, no reasonable degree of engineering certainty nor any causation opinion from

---

[19]Actually, it was likely a gas ball valve which shattered during the explosion–he conveniently ignores that the other gas valves in the interior piping system were ball valves.

Mr. Meyer exists that is sufficient to withstand summary judgment.[20]

The foregoing is the only "evidence" as to the water heater or adjacent piping presented by the defense to date.  This is not sufficient to meet Defendants' burden as to their affirmative defense on summary judgment.  There is simply no genuine issue of material fact as to any breach of duty or causation of these named at fault individuals and the water heater installation.  Defendants will attempt through their experts to argue that an outside leak did not cause this explosion (if their experts survive Daubert challenges), but they certainly cannot point to and have not pointed to any admissible evidence supporting any negligence in the installation of the water heater as being the cause of the leak and explosion.  Defendants cannot present this issue to the jury without some evidence of non-party fault that was a causal factor in the explosion.

## IV.    Legal Argument Under Michigan Non-Party Fault Law

Even assuming *arguendo* only that Michigan non-party fault law were to apply,[21] Defendant has not met its burden of proof.  *Palenkas v. Beaumont Hosp.*, 432 Mich. 527, 548, 443 N.W.2d 354, 363 (Mich. 1989); *McCoy v. Lamotte Coachlight Corp.*, 2007 WL 4270659, *2 (Mich. App. 2007), **Ex. CC**.  See also *Acorn Window Systems, Inc. v. Detroit Edison Co.*, 2003 WL 21921165, *2 (Mich. App. 2003), **Ex. DD** ("a defendant attempting to mitigate liability through a comparative fault defense has the burden of alleging and proving that another person's conduct was a proximate cause of damages.")

The non-party fault statute, MCL § 600.6304 (emphasis added) provides, in relevant part:

---

[20]Of course, Mr. Meyer skips over the facts that the irrefutable evidence that the valving to the hot water heater was turned off and not functioning, and that the piping was twice leak tested before the accident.

[21]Plaintiffs dispute that Ferrellgas should get the benefit of non-party fault. *See infra.*

11

(1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and non-parties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:

    (a) The total amount of each plaintiff's damages.

    (b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff and each person released from liability under Section 2925d, regardless of whether the person was or could have been named as a party to the action.

(2) In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed.

    . . . .

(8) As used in this section, "fault" includes an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party.

The statute "places the burden of proof on the defendant to prove the non-party's fault." *Wall v. Cherrydale Farms, Inc.*, 9 F. Supp.2d 784, 786 (E.D. Mich.1998); MCL §600.2960(1) ("the person seeking to establish fault under Sections 2957-2959 has the burden of alleging and proving the fault.")[22]

In *In re Enron Corp. Securities, Derivative & ""ERISA" Litigation*, 236 F.R.D. 313, 319 (S.D. Tex. 2006), reversed on other grounds, *Regents of University of California v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372 (5th Cir. 2007), the court cited Michigan's non-party fault statutes as well as other states, and explained:

    In such statutes, it is standard that the claim that a non-party is at least in part at fault for the plaintiff's loss is an affirmative defense, on which the defendant asserting the claim has the

---

[22]*See also  See Nash v. Wells Fargo Guard Servs., Inc.,* 678 So.2d 1262, 1264 (Fla.1996) (in order to include a non-party on a verdict form, a defendant has the burden of presenting evidence that the non-party's fault contributed to the accident or injury.)

burden of proof to establish by a preponderance of the evidence that the non-party was at least partially at fault.... Thus the court will require any party designating a non-party as potentially wholly or partially at fault to bear the burden of proof demonstrating that the non-party violated the federal securities statutes.

As explained in *Holton v. A+ Ins. Associates, Inc.*, 255 Mich. App. 318, 326, 661 N.W.2d 248,

253 (2003) (citations omitted) (emphasis added), in discussing fault allocation:

to establish the requisite causation between an alleged wrongful act and resulting damages, the actor's conduct must be shown to be both a cause in fact and a legal or proximate cause of the plaintiff's damages. While causation is generally a matter for the trier of fact, if there is no issue of material fact, then the issue is one of law for the court.[23]

In *Jones v. Enertel, Inc.*, 254 Mich App 432, 656 N.W.2d 870 (2002), the court explained that

in the absence of proof of a legal duty to a pedestrian, the installer of a sidewalk could not be

named as a non-party at fault. See also *Auito v. Clarkston Creek Golf Club, Inc.* 2004 WL

1254193, *8 (Mich. App. 2004) (emphasis added), **Ex. EE** ("We conclude that the present case is

controlled by *Jones*, and that Harris, as a dismissed party who did not breach his duty to plaintiff,

could not be properly named as a non-party at fault and included in the allocation of fault.")

Causation is an element of the affirmative defense of non-party fault.  As to causation and

expert opinion (as Ferrellgas is relying upon two experts as to the water heater installation non-

party fault issue), the case law is clear that:

The plaintiff in a Michigan negligence action need only provide proof of "a reasonable likelihood of probability" that his explanation of the injury is correct. *Skinner v. Square D Co.*, 445 Mich. 153, 516 N.W.2d 475 (1994). **The evidence need not negate all other possible causes, <u>but such evidence must exclude other reasonable hypotheses with a fair amount of certainty</u>**. Absolute certainty cannot be achieved in proving negligence circumstantially; but such proof may satisfy

---

[23]The court went on to find that the basis on which the defendants in that case sought to apportion liability concerned the cause of the fire, not liability for the failure to provide adequate insurance and, thus, the trial court properly determined, as a matter of law, that the wrongful conduct alleged by defendants did not cause the lack of insurance.

where the chain of circumstances leads to a conclusion which is **more probable than any other hypothesis reflected by the evidence. However, if such evidence lends equal support to inconsistent conclusions or is equally consistent with contradictory hypotheses, negligence is not established.** Id. at 481.[24]

As to the water heater installation, the defense has failed miserably in non-party fault terms, and has not even come close to meeting *Daubert* and/or *Skinner* requirements as to the water heater installation and any negligence and causation in that regard.[25] Mr. McCarthy admits that: "**[t]he specific source of the propane gas leak in the utility room could not be determined from the available evidence.**" R. McCarthy Report, p. 7, **Ex. AA.** (emphasis added). He can offer only possibilities as to the source of the leak. Defendants must provide evidence of non-party fault, an affirmative defense, or expert opinion that shows a material question of fact is created as to whether it is more probable than any other hypothesis reflected by the evidence. If such evidence lends equal support to inconsistent conclusions or is equally consistent with contradictory hypotheses, fault is not established—there is no breach of a legal duty that is a proximate cause of the damage sustained by the party.

Here, **at best,** Defendants claim "possible" causation and fault as to the water heater installation, i.e., mere speculation and innuendo. Even if there was a leak in the utility room, there

---

[24]*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "[A]n expert's opinion must be supported by 'more than subjective belief and unsupported speculation' and should be supported by 'good grounds,' based on what is known.' *Pomella v. Regency Coach Lines, Ltd.,* 899 F. Supp. 335, 342 (E.D. Mich.1995), *quoting Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The expert's conclusions regarding causation **must have a basis in established fact and cannot be premised on mere suppositions**. *See Skinner,* 516 N.W.2d at 484." *McLean,* 224 F.3d 797, 801.

[25]Plaintiffs will be filing *Daubert* and *Skinner* challenges to experts at a later date. Plaintiffs address only *Daubert* and *Skinner* as to the limited issue before the Court, i.e., the installation of the water heater.

is no evidence of negligent installation presented to date.  Simply because the water heater was

changed a few days earlier, or that experienced installer Moiles (who testified that he leak tested

the piping after the installation which showed no leaks[26]) was not actually "licensed" is all mere

innuendo and a classic red herring, and clearly do not create a material question of fact as to non-

party fault or show any causation with respect to the explosion.  Fed. R. Civ. P. 56(c).  No

negligence or breach of duty has been shown or alleged as to the water heater installation that was

shown to be a causal factor in the explosion.  Thus, there is no material question of fact as to the

non-party negligent water heater installation affirmative defense raised by Defendants.  Summary

judgment on this affirmative defense is required.

## V.     Legal Argument Re: Application of Missouri Joint and Several Liability Law, or, Alternatively, Virginia Joint and Several Liability Law; No Non-party Should Be Allowed on the Jury Verdict Form

Pursuant to Michigan's conflict of law rules, a rational reason exists to displace Michigan

several only liability and non-party fault apportionment law with either Virginia or Missouri joint

and several liability law.   First, it must be determined whether the laws of the potentially interested

states are in conflict on this issue.[27]   The potentially interested states include Virginia (domicile of

eight (8) Bryant children), Missouri (principal place of business of Ferrellgas), and Michigan (situs

of accident, where Ferrellgas conducts some business, and domicile of Joseph Moore).

As to the law of Virginia, the court in *Wright v. Lilly*, 2004 WL 2656839, **11-12 (Va. Cir. Ct.

---

[26]Dep. of L. Moiles, p.76, **Ex. R**.

[27]Of note, this Court may recall there was no actual conflict between the potentially interested states as the two prior issues decided by this Court, i.e., negligence and statute of repose. The laws of the potentially interested states were similar as to those two issues.  All states recognized negligence and the statutes of repose did not apply to ongoing propane gas service providers.

2004), **Ex. FF**, explained:

> In his review of joint and several liability in Personal Injury Law in Virginia, Professor Friend notes that:
>> At common law, joint tort-feasors were persons who acted in concert to cause a plaintiff's injury. In the United States, the definition of "joint tort-feasors" was judicially extended to include those who did not act in concert, but whose concurrent wrongdoing caused a single injury. Virginia has followed this latter view.
>> It is often stated in the Virginia cases that joint tort-feasors are jointly and severally liable. Essentially, this means that where the damages caused by the wrongful acts of two or more persons produce a single injury, both tort-feasors may be held liable for the entire amount of the injured person's damages. The law does not attempt to apportion the injury, and each joint tort-feasor is held liable for the whole of the damages. This is true even though the wrongful acts of the various tort-feasors are not considered, each being held liable for the whole of the damages even though the others were equally culpable, or contributed in a greater or lesser degree to the injury. For these reasons, it is often said that a defendant cannot escape liability for his own negligence merely by showing that another person was also negligent. Charles E. Friend, *Personal Injury Law in Virginia*, § 14.1 (3rd ed.2003).[28]

Missouri has long recognized joint and several liability.[29] Fault is only to be apportioned among those parties at trial.[30]

---

[28]*See also Midkiff v. Lowe's Home Centers, Inc.*, 2007 WL 2188131, *4 (W.D.Va. 2007) ("Under Virginia's joint and several liability scheme, she could have sued either Lowes, Werner, or both."), **Ex. GG**; *Allstate Ins. Co. v. Brown*, 736 F. Supp. 705, 709 (W.D.Va. 1990) ("In Virginia, the liability of joint tort-feasors is joint and several.")

[29]*See generally Lindquist v. Mid America Orthopaedic Surgery, Inc.*, 224 S.W.3d 593, 595-596 (Mo. 2007) (citation omitted) ("The rules of joint and several liability provide that joint tort-feasors are 'answerable to the injured party for the full amount of the injuries.'"); *Mathes v. Sher Express, L.L.C.*, 200 S.W.3d 97, 108 (Mo. App. W.D. 2006) (citation omitted) ("where the injury (such as death) is indivisible, the original and subsequent tortfeasor are treated as jointly and severally liable for the whole injury if they both contributed in any part to the injury.").

[30]*Fahy v. Dresser Industries, Inc.*, 740 S.W.2d 635, 641 (Mo. 1987). *See also Jenson v. ARA Services, Inc.*, 736 S.W.2d 374, 377 (Mo. 1987) ("In Missouri, however, fault is only to be apportioned among those at trial and Missouri courts have rejected invitations to change to a total fault apportionment."); *Capell v. Abbick*, 123 S.W.3d 193, 195 (Mo. App. W.D. 2003) (citations omitted) ("The statute says, 'In all tort actions for damages, in which fault is not assessed to the plaintiff, the defendants shall be jointly and severally liable for the amount of the judgment rendered against such defendants.' Apportionment of fault between defendants has no effect on a

Section 537.067 of the Missouri Statutes was amended in 2006, effective August 28, 2005. The amendment now provides a modified joint and several liability "if a defendant is found to bear fifty-one percent or more of fault." V.A.M.S. § 537.067(1) (emphasis added).

A defendant determined to be less than 51% at fault will still be jointly and severally liable if acting as an agent/employee of the other. V.A.M.S. § 537.067(1)(1)-(2).

Michigan law, on the other hand, recognizes several liability, and allows non-party fault apportionment at trial if a defendant properly notifies a plaintiff of the identity of non-parties alleged to be at fault and provide a factual basis showing that fault within 91 days from the filing of the complaint. MCL 600.2957(1); MCL 600.6304. (Of course, there still must be a genuine issue of material fact in order to present that affirmative defense to the jury. *See Section IV, supra.*)

Thus, the laws of the potentially interested states appear to differ on this issue, requiring a conflict of law analysis. A court sitting in diversity must apply the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

> The Michigan Supreme Court has adopted "no specific methodology" to resolve conflicts of law, and "each case must be evaluated on the circumstances presented." ....While this case-by-case approach provides limited guidance to courts resolving conflicts, Michigan decisions have clearly established that a court must have a rational reason to justify displacing the law of the forum, lex fori, in favor of a foreign law.

*In re Air Crash Disaster*, 86 F.3d 498, 541 (6th Cir. 1996) (citations omitted).

In *Sutherland v. Kennington Truck Service Ltd.*, 454 Mich. 274 (1997), the court found that Michigan law applies unless a rational reason to do otherwise exists, i.e., unless a foreign state has a

---

plaintiff's right to collect the full amount of a judgment from any one of the defendants."); *Thurman v. St. Andrews Management Services, Inc.*, 2008 WL 4402456, 5 (Mo. App. E.D. Sept. 30, 2008) (citation omitted), **Ex. HH** ("While allocation of fault to non-parties normally is not permitted, Section 538.230 expressly allows allocation of fault to those persons already released from liability by virtue of settlement").

more significant interest in applying its law.  In *Sutherland*, Ohio plaintiffs brought suit in Michigan

against Canadian defendants in an action arising from a collision in Michigan. Under Ohio law, the

action would have been time barred.  The court held that Michigan's three (3) year statute of

limitations applied, which preserved the action, and noted that Ontario would apply the law of

Michigan under its *lex loci* conflict rule.  The court found that neither Ohio nor Ontario had a real

interest in the issue–"We do not agree, however, that Ontario has an interest in protecting the

defendants from stale claims in this situation." Id. at 288.  Likewise, in the instant case, Michigan

does not have a real interest in protecting a foreign corporation with several liability and

apportionment to non-parties when that corporation commits criminally negligent acts that kill 6

children and severely injury 3 others, all but one of which are from Virginia.

In *In re Disaster at Detroit Metropolitan Airport on August 16, 1987*, 750 F. Supp. 793 (E.D.

Mich.1989), the court held, in part, that under Michigan conflict of law rules, a rational reason

existed to displace Michigan's product liability law in favor of California strict liability law with

respect to design defect claims by Michigan claimants, and that California law also applied to those

claims by Arizona, Florida, and California claimants.  Similarly, the court held that the law of

Massachusetts, where the company designed and manufactured the circuit breaker that was the

subject of a products liability action, governed elements of the airline's product liability claims.[31]

---

[31]In *Evans v. Knisley Welding, Inc.,* Unpublished Order of Judge Batzer, **Ex. II** (where two Michigan residents sued Knisley Welding, a California corporation, and the aircraft owner, a Michigan resident, arising from an in-flight fire and aircraft crash in Michigan, the court found that under Michigan's conflict of law rules, Michigan had no real interest in applying its corporate protective 1995 tort reform amendments (i.e., product liability, several liability, non-party fault, product caps) to the claims brought by the Michigan residents against Knisley Welding).  *See also Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 168, n.76 (3d Cir. 1980) (citations omitted) ("Courts employing governments interest analysis have not struggled long to determine that a state where plaintiff but not defendant resides has no interest in restricting

18

As to non-party fault and conflict of law analysis, in *Dale v. Ala Acquisitions I, Inc.*, 434 F.

Supp.2d 423, 434 (S.D. Miss. 2006), a defendant attempted to apply the law of Mississippi which

would allow apportionment as opposed to New York law which was much more limited.  The court,

applying Mississippi's center of gravity conflict of law rule (similar to interest analysis), explained:

"The manifest purpose of Mississippi's apportionment statute is the protection of defendants, and

the simple fact is, Mississippi has no interest in protecting nonresident defendants such as Dreyfus.

*Villarreal v. Superior Court of Los Angeles*, 2004 WL 902114, at *3 n. 4 (Cal. App. April 28, 2004)

(rejecting argument that forum state, whose law provided for apportionment of fault among all

tortfeasors, had an interest in protecting nonresident defendant merely because that defendant did

business in the state)." *Id.*

In the instant matter, a rational reason exists to displace Michigan several liability,

non-party fault trial apportionment scheme in favor of Missouri's modified joint and several

liability, or the joint and several liability law of Virginia.  Michigan simply has no real interest in

protecting these Missouri corporations here with non-party fault allocation at trial and several

liability to the detriment of eight Virginia and one Michigan resident; a "false conflict" exists on

this issue.  Although Ferrellgas, a Missouri corporation, conducts some of its propane gas business

here in Michigan, Michigan is certainly not a "major hub" of Ferrellgas like, for example, that of

Northwest Airlines in the *In re Air Crash* litigation.  Why should Michigan protect a Missouri entity

like Ferrellgas when its criminally negligent actions in Michigan are alleged to have caused the

deaths of six children and severely injured three others, all but one of which were residents of

---

recovery for wrongful death of its citizens against foreign corporations"), *rev'd on other grounds*
454 U.S. 235 (1981).

Virginia merely visiting their aunt in Michigan? Ferrellgas certainly cannot claim surprise about the application of Missouri joint and several liability law seeing how its "Master Agreement" with non-party homeowner Lorrie Kuchar mandates that Missouri law be applied regardless of conflict of law rules.  See Ferrellgas' "Master Agreement," ¶13(e), **Ex. JJ**

Respectfully submitted this 5th day of November, 2008.

/s/ John J. Kalo _____
John J. Kalo (P29861)
John D. McClune (P51948)
Philip Swann (P28345)
Jeffery Zilinski (P35884)
William R. Coppel (P12220)
Attorneys for Bryant and Moore    Charles L. McCarter (P17282)

20

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 5, 2008, I electronically filed Plaintiffs Bryant and Moore's

Motion for Partial Summary Judgment - Water Heater and Brief in Support, with the Clerk of the

Court using the ECF system which will send a notification of such filing to the following:

Gregory W. Wix, Esq. (P65424)          Lawrence C. Mann, Esq. (P32223)
greg.wix@det.bowmanandbrooke.com       larry.mann@det.bowmanandbrooke.com


Respectfully submitted,

By:     /s/  John J. Kalo
        John J. Kalo (P29861)
        Attorneys for Mark Bryant
        4500 East Court Street
        Burton, MI 48509
        (810) 743-4363; Fax (810) 743-4468
        jkalo@aol.com